# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **KELLI WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **3:06-0359** |
| | ) | **Judge Echols** |
| **STEVEN D. BELL & CO. d/b/a** | ) | |
| **WYNDCHASE BELLEVUE** | ) | |
| **APARTMENTS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

This is a diversity action in which Plaintiff claims Defendant violated the Tennessee Human Rights Act ("THRA"), T.C.A. § 4-21-401 *et seq.*, by engaging in pregnancy discrimination. Defendant Steven D. Bell & Company d/b/a Wyndchase Bellevue Apartments has filed a Motion for Summary Judgment (Docket Entry No. 19), to which Plaintiff has responded in opposition (Docket Entry No. 20), and Defendant has replied (Docket Entry No. 24).

## I. FACTS

Defendant Steven D. Bell & Company is a property management company. One of the properties it manages is the Wyndchase Apartment Complex in Bellevue where Plaintiff served as the assistant community manager until her termination on March 27, 2006.

At all relevant times, the office at Wyndchase had three full-time employees. In addition to Plaintiff, the office staff consisted of Rodney Fortner ("Fortner"), the community manager, and Donna Givens ("Givens"), the leasing agent.

As assistant community manager, Plaintiff was responsible for collecting and posting rent payments, sending out delinquency notices, making sure that residents signed renewals, and leasing

apartments. Plaintiff was required to handle other matters as necessary. Given the size of the office, it was difficult for other employees to cover Plaintiff's duties when she was not at work.

At some point during her employment, Plaintiff decided she wanted to become pregnant and was very up-front with her co-workers about that desire. On several occasions, Fortner told Plaintiff something to the effect of "I know you're leaving, I don't want you to be pregnant. You're not going to be here." (Fortner Depo. at 16-17). Fortner claims the statements were made in jest, he had a good rapport with Plaintiff, and he was very happy for Plaintiff once she did in fact become pregnant. Fortner claims that he did not want to lose Plaintiff as an employee and he had been told by Givens that Plaintiff had no intention of returning if she got pregnant because Plaintiff did not want to place her newborn baby in childcare. In February 2006, Plaintiff learned she was pregnant.

From February 15, 2006 to March 20, 2006, Plaintiff took a leave of absence from work due to migraine headaches. On Tuesday, March 21, 2006, Plaintiff called the Wyndchase office to say that she was going to be late because she was not feeling well. The next day, Wednesday, March 22, 2006, Plaintiff had a doctor's appointment and did not arrive at work until 1:30 p.m. or 2:00 p.m. The following day, March 23, 2006, Plaintiff left work around lunch time. She called the office about an hour and fifteen minutes later to say she was not feeling well and would go home for the rest of the afternoon. Plaintiff also stated she was going to take the next day, Friday, March 24, 2006, off so that she would be prepared to work on Saturday March 25, 2006. By this point in time, Plaintiff had not worked an entire shift since February 25, 2006.

On Saturday, March 25, 2006, Plaintiff worked her scheduled shift from 10:00 a.m. to 5:00 p.m. Plaintiff was terminated when she arrived for work on Monday, March 27, 2006.

2

The termination decision was made by Fortner in consultation with Lisa Swick, Defendant's regional manager. Defendant claims the termination decision was made because Plaintiff's absences made it impossible for her to perform her job duties. Because the office was small, the other employees could not do Plaintiff's work as well as their own. Plaintiff was told at the time of her termination that she was eligible for rehire.

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence

3

in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III.  APPLICATION OF LAW

Because the THRA is co-extensive with Title VII, claims of discrimination under both statutes are analyzed in the same way.  Frizzell v. Southwest Motor Freight, 154 F.3d 641, 646-47 (6th Cir.1998);  Campbell v. Florida Steel Corp., 919 S.W.2d 26, 31 (Tenn. 1996).  The Pregnancy Discrimination Act of 1978 ("PDA"), which amended Title VII, does not require employers to take steps to make it easier for pregnant women to work or to treat them specially.  Mayberry v. Edocrinology-Diabetes Ass'n., 926 F.Supp. 1315, 1326 (M.D. Tenn. 1996).  In fact the PDA requires employers to ignore an employee's pregnancy, but not her absences from work.  Laxton v. Gap, Inc., 333 F.2d 572, 578 (5th Cir. 2003)(collecting cases).  In other words, working pregnant women must not be discriminated against, but must be allowed to work under the same condition as other employees and afforded the same salary, leave, and other fringe benefits.

In order to prevail on her claim, Plaintiff "must offer direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." Johnson v. Kroger Co., 319 F.3d 858, 864-65 (6th Cir. 2003).  In this case, it is not altogether clear from Plaintiff's brief whether she is seeking to establish her claim of pregnancy discrimination based on either direct evidence, circumstantial evidence, or both.  The focus of her brief is that credibility determinations are for the jury to make and therefore this Court must disregard the affidavits of Fortner and Swick submitted by Defendant and deny summary judgment.

While questions of credibility are for the jury to make, what Plaintiff fails to recognize is that to defeat Defendant's properly supported motion for summary judgment, she, as the non-movant,

4

must set forth specific facts showing that there is a genuine issue of material fact for trial. She has

not done so whether the case is viewed as one involving direct evidence or indirect evidence.

## A. <u>Direct Evidence</u>

The Sixth Circuit has explained "direct evidence is that evidence which, if believed, requires

the conclusion that unlawful discrimination was at least a motivating factor in the employer's

actions." <u>Jacklyn v. Shering-Plough Healthcare Prods. Sales Corp.</u>, 176 F.2d 921, 926 (6th Cir.

1999). "Consistent with this definition, direct evidence of discrimination does not require a

factfinder to draw any inferences in order to conclude that the challenged employment action was

motivated at least in part by prejudice against members of the protected group." <u>Johnson</u>, 319 F.3d

at 865. Moreover, "[i]t is well established that isolated and ambiguous comments are not sufficient

to make out a direct-evidence case of employment discrimination." <u>Weigel v. Baptist Hosp. Of East</u>

<u>Tennessee</u>, 302 F.3d 367, 382 (6th Cir. 2002).

Plaintiff claims that on several occasions Fortner stated "I don't want you pregnant, you will

leave," or words to that effect. Even if not made in jest, such statements do not constitute direct

evidence of discrimination because they require an inference to be drawn in order "to prove the

existence of a fact (i.e. unlawful discrimination)[.]" <u>Vredevelt v. GEO Group, Inc.</u>, 2005 WL

1869607 *5 (6th Cir. 2005)(citation omitted).

The Sixth Circuit has stated that "a corporate decision maker's express statement of a desire

to remove employees in the protected group is direct evidence of discriminatory intent." <u>Nguyen</u>

<u>v. Cleveland</u>, 229 F.3d 559, 563 (6th Cir. 2000). Thus, direct evidence was found to exist in <u>Johnson</u>

<u>v. Univ. of Cincinnati</u>, 215 F.3d 561 (6th Cir. 2000), wherein the university president purportedly

said that "[w]e already have two black vice presidents. I can't bring in a black provost." <u>Id</u>. at

5

577 n.7.  Such a comment required no inference to conclude that racial considerations motivated the employment decision.

Here, in contrast, no clear connection exists between Defendant's decision to terminate Plaintiff and Fortner's statement about not wanting Plaintiff to get pregnant because she would leave her employment.  Taken at face value it shows no discriminatory intent.  See, Johnson, supra 319 F.3d at 865 (direct evidence did not exist where in order to determine discrimination occurred one would have to take "inferential step" to conclude that because manager held a belief he would want Plaintiff's employment terminated).  Quite the contrary, Fortner's comments suggest he did not want to lose Plaintiff as an employee.  Only by adding inferences can Fortner's statements be understood as evidencing his desire to terminate Plaintiff were she to become pregnant.

Additionally, Plaintiff has not demonstrated that the comments attributed to Fortner were temporal to her termination.  When the statements were made is simply not clear from the record before the Court.  To the extent the comments were made during the time Plaintiff was attempting to get pregnant, they were made long before Plaintiff's termination in late March 2006, and cannot serve as direct evidence of discrimination.  See, Das v. Ohio State Univ., 57 Fed. Appx. 675, 678-79 (6th Cir. 2003)("Merely vague, ambiguous, or isolated remarks by a company agent which were not related to the decision-making process and were not made proximate to the assailed adverse employment action cannot constitute sufficient direct evidence of outlawed employment discrimination").

The Sixth Circuit's discussion in Suits v. The Heil Co., 192 Fed. Appx. 399 (6th Cir. 2006) is instructive on the issue of direct evidence in this case:

> Liberally construing the evidence in Plaintiff's favor, her only *direct* evidence of discrimination are remarks by [her supervisor] in a casual setting indicating he held

6

certain stereotypical beliefs about new mothers as workers which *might* have been made with the knowledge he was going to have to reduce expenses and/or lay off one or more employees under his supervision. Standing alone, this evidence, even if believed, does not *require* the conclusion Plaintiff's pregnancy was a motivating factor in [the supervisor's] decision to eliminate her position. While [the supervisor's] remarks are not entirely innocuous "stray" remarks, their context and setting are not sufficient to establish a link or nexus between Plaintiff's pregnancy and the adverse employment action. Additional inferences are necessary, which compels the conclusion a direct evidence claim has not been established.

Id. at 403-04 (italics in original).

Likewise in this case, the remarks made by Fortner can be viewed as suggesting that he thought new mothers preferred to remain home and therefore Plaintiff would want to stay home were she to become pregnant and have a child. However, the statements to the effect of "I know you're leaving, I don't want you to be pregnant. You're not going to be here," can equally be viewed as suggesting Fortner did not want to lose an admittedly good employee and thus do not require the conclusion that Fortner decided to terminate Plaintiff because she became pregnant.

Because Fortner's comments do not compel the conclusion that Defendant's decision to terminate Plaintiff was motivated by pregnancy discrimination, Plaintiff has not shown direct evidence of discrimination. Accordingly, the Court turns to the circumstantial evidence in the record and whether that evidence is sufficient to establish a jury question.

### 2. *Circumstantial Evidence*

The analytical framework for evaluating circumstantial evidence cases under the THRA and Title VII is well-established. In the context of pregnancy discrimination, it is Plaintiff's initial burden to set forth a *prima facie* case of discrimination by showing, "(1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." Tysinger v. Police Dept.

7

of City of Zanesville, 463 F.3d 569, 573 (6th Cir. 2006).  If a *prima facie* case is established, the burden shifts to the Defendant to offer a legitimate non-discriminatory reason for the employment action.  See, Sutherland v. Michigan Dept. of the Treasury, 344 F.3d 603, 614 (6th Cir. 2003).  If the Defendant meets this burden, then the burden of production shifts back to the Plaintiff to demonstrate that the proffered reason is a pretext.  Id.

In this case, Plaintiff has wholly failed to present any evidence which would meet the fourth prong of the *prima facie* case.  It is incumbent upon Plaintiff to present evidence from which a jury could conclude that "comparable employees in all relevant respects" were treated more favorably which would give rise to an inference that pregnancy was the reason for less favorable treatment. "In relation specifically to a pregnancy discrimination claim, the 'relevant respects' in which comparables must be similarly situated are their 'ability or inability to work.'" Tysinger, 463 F.3d at 573 quoting, Ensley-Gaines v. Runyon, 100 F.3d 1220, 1226 (6th Cir. 1996).

In this case, Plaintiff identifies no employee, let alone one who was comparable to her in all relevant respects, who was treated more favorably than she was.  In fact, she admits that she repeatedly missed work while she was pregnant.  She also admits other employees who worked for Defendant full-time during pregnancy were not terminated.  Under Tennessee law, employers "have the right to expect employees to report to work at the agree-upon time and to work for the agree-upon shift. Span v. Abraham, 36 S.W.3d 452, 467 (Tenn. App. 1999).   The prohibition against pregnancy discrimination does not change that principle and, indeed, "[t]he [Pregnancy Discrimination Act] does not require an employer to overlook a pregnant employee's absences from work, unless as a general matter, the employer overlooks the absences of non-pregnant employees."

Case 3:06-cv-00359   Document 27   Filed 05/01/07   Page 8 of 9 PageID #: 145

*Id*. Plaintiff presents no evidence that Defendant in this case overlooked other employee's absences but not hers. She therefore cannot establish a *prima facie* case of pregnancy discrimination.

Even if Plaintiff had sufficient evidence to present a *prima facie* case to the jury, Defendant has presented a legitimate non-discriminatory reason for its action. Plaintiff was absent or late to work for approximately six weeks and did not work a forty hour week during that period in a three-person office where her absences placed an undue hardship on her employer. Plaintiff presents no evidence that this reason was pretext and therefore Defendant is entitled to summary judgment.

## IV. CONCLUSION

On the basis of the foregoing, Defendant's Motion for Summary Judgment (Docket Entry No. 19) will be granted and an appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

Case 3:06-cv-00359   Document 27   Filed 05/01/07   Page 9 of 9 PageID #: 146